## Fischer v. Fischer

*Chris F. Gillotti,* for plaintiff.
*Ann Lee Begler,* for defendant.

STRASSBURGER, *J.,* July 31, 1984—This court has thoroughly reviewed the comprehensive master's report, as well as the thorough briefs filed by the parties. The court is in basic agreement with the thrust of the master's recommendations, although not with all the details.

### I. DIVORCE

Wife has excepted to the finding that the parties are divorced, in light of her filing exceptions to the decree of divorce dated December 8, 1981. Inasmuch as those exceptions were directed to the court's bifurcating the divorce; and because the exceptions, not acted upon, served to stay the divorce thus accomplishing wife's purpose in opposing bifurcation; and because a decree on all the related claims will now issue, wife's exceptions to the divorce decree are moot. Wife's attorney so recog-

nized, and agreed at oral argument that they be dismissed.

## II. EQUITABLE DISTRIBUTION

### A. Profit Sharing Plan

One of the most significant issues in this case is the treatment to be accorded the profit sharing plan. Husband's primary objection to the master's proposal is the manner in which the master dealt with the nonvested portion of the profit-sharing plan. Husband asserts that such nonvested portion is nonmarital property. This court is of the view that the master's approach and its reliance on Chase v. Chase, 4 ACDD 79, 85 (1983), which treated a nonvested, noncontributory savings plan as marital property, was correct.

In addition, this court, per Judge Wettick, has recently dealt at considerable length with the question whether a nonvested pension constituted marital property. After reviewing the split of authority from other jurisdictions, Judge Wettick concluded that even nonvested pensions are marital property. Salac v. Salac. no. 2310 of 1978. Although footnote 3 in that opinion limits the holding there to defined benefit as opposed to defined contribution plans, that limitation related to the valuation problems inherent in defined benefit as opposed to defined contribution plans. The vesting issue in this profit sharing plan is indistinguishable from the vesting issue in Salac.[1]

---

1. Actually the instant case is even stronger for treating the asset as marital. In Salac, Judge Wettick stated that retirement benefits would be considered nonvested "so long as the right to receive these benefits will be forfeited by discharge, voluntary termination, or death". Wife's Exhibit V, the explanation of the profit sharing plan given to husband by his em-

It is of course true that it may be necessary to discount a nonvested retirement plan to some extent to reflect the possibility that it will not vest. However, given the rare benefit of hindsight in this case, it is known that the plan did indeed vest 100 percent and thus no discount is necessary. Even if it would be considered improper to look at what has actually happened rather than the probability of what would happen as of the date of separation, the chance that the remainder of husband's profit sharing plan would not vest was negligible given his history with the company, his position as president, and his relationship with the owners.

While this court agrees with the master that the value of the entire profit sharing plan to the date of separation is marital property, some slight disagreement exists as to the treatment of the reallocation of forfeitures of other employees. The master correctly held that post-separation contributions by the employer and post-separation reallocation of forfeitures to other employees constituted nonmarital property. Unfortunately he failed to treat income attributable to this nonmarital property as nonmarital as well. Recalculating to account for this discrepancy results in a finding that the marital property component of the total profit sharing plan of $136,637.16 as of July 31, 1982, was $112,224.63.[2] Brought to date (July 31, 1984) at ten percent interest, this amounts to $134,669.55. Since husband will be liable to tax on his distributions from the profit sharing

---

ployer, states that husband's interest will be nonvested only if his "employment is terminated for any reason other than retirement, death, or disabilty". Thus, at least in the death situation, the benefits involved here would be considered vested whereas they would not have been so considered in Salac.

2. Calculations are attached as Exhibit "A" to this opinion.

plan, the value of the plan must be discounted to account for the tax consequences. Since no evidence was presented as to the amount of tax to be paid, this court estimates that a 15 percent reduction is appropriate. See Feintuch v. Feintuch, N. J. Superior Ct. (no. M-14705-81, 1983), where the rate was lower on a smaller amount. Reducing the marital share of the profit sharing plan by 15 percent results in a final figure of $114,469.

B. Insurance

Both parties assert that the master erred in his treatment of the cash value of the insurance policies. The parties stipulated that the guaranteed cash surrender value of the whole life insurance policies was $6,414.70 as of the date of separation, August 23, 1978, and $7,992.50 in 1981. In October, 1981, husband borrowed against the policies and received the sum of $9,719.92. The master found that the $9,719.92 constituted marital property. Husband urges that only $6,414.70, the cash surrender value as of the date of separation, was marital property, while wife contends that the proceeds of the borrowing must be traced into the various items of intangible personal property purchased by husband.

Wife's position has already been rejected by this court. The master correctly cited Judge Kaplan's language in Gallagher v. Gallagher, 3 ACDD 132, 137-138 (1982):

"Plaintiff would have us trace the withdrawal of defendant's profit-sharing of $5,000.00 into his condominium apartment and attribute a proportionate share of the appreciation of the condominium to this $5,000.00 as a percentage of the initial down payment. We cannot accept this approach. If a person diverts marital assets for his or her own use, that

person should be made to account for it as if it had been retained in its original form.

Husband's position is also incorrect, as it ignores the increase in value of the asset since the date of separation.

Finally, this court cannot accept the master's recommendation in its entirety either. This court agrees with the master that all of the proceeds must be considered marital property. It is impossible on this record to determine what the difference in cash value between the $9,719.92 actually received by husband and the $7,992.50 stipulated as the guaranteed cash surrender value in 1981 represents. It might represent credit for post-separation payment of premiums by husband, as testified to by husband, but that is far from clear. Under §401(f) of the code, all property acquired during marriage is presumed to be marital and it is husband's burden here to prove to the contrary. He has failed to meet this burden, and this court thus holds that the master did not err in treating the entire cash surrender value received by husband as marital.

Nonetheless, the master did err in failing to add an interest factor to the funds received by husband in October, 1981. The court agrees with wife that ten percent per annum is a reasonable rate under the circumstances.

C. Pine Court

Although in her exceptions and brief in support thereof wife contends that the Pine Court condominium is marital property, at oral argument she abandoned that claim. The record supports no other conclusion.

D. Award

(1) Proportion

This court is in agreement with the master's analysis in which he concludes that a departure from

the 50-50 starting point of Paul W. v. Margaret W., 1 ACDD 147 (1981) is appropriate. Husband's separate property, together with his much greater opportunity for accumulation of income and assets, warrants granting wife a larger share of the equitable distribution pie.[3]

How much greater a share wife should receive is a matter of considerable difficulty. The difficulty arises because of the interrelationship between the equitable distribution and the alimony awards.

All other things being equal, it is preferable to award dependent spouse sufficient assets in equitable distribution to enable her[4] to derive enough income therefrom that she does not require alimony. Such a resolution avoids entangling the parties concerning alimony payments long after the marriage has been dissolved. A clean break is preferred if possible.

Additionally, since alimony terminates on remarriage or cohabitation of the payee spouse, an award to her which relies predominantly on alimony to adjust the imbalance in the parties' situation can result in unfairness to her.

Counterbalancing the above factors suggesting reliance on equitable distribution as opposed to alimony are various considerations pointing in the other direction. They include the tax consequences, both the taxability of an unequal division of property

---

3. This court does not agree with all of the master's discussion on this issue. For instance, the discussion relating to video tapes at page 50 of the master's report is unsupported by the record. Nonetheless, it is apparent that husband has secure, well-paying employment and wife does not.

4. In using the female gender to describe dependent spouse, the court is simply adopting the pattern that exists in most cases. However, it is recognized that cases exist where the husband is the dependent spouse.

and the deductibility to the payor and taxability to the payee of alimony. Ordinarily, more dollars will be available to the entire broken family unit if at least some of the funds flowing from the independent to the dependent spouse are in the form of deductible alimony.

The flexibility of alimony is another factor counseling its use in appropriate circumstances. Whereas an equitable distribution award is ordinarily written in stone, alimony is modifiable. §501(e). Where as here the wife's employment picture is clouded, reliance on an alimony order that may be adjusted as her income increases or decreases may be the realistic approach.

Finally, liquidity problems such as those in the instant case diminish the attractiveness of too heavy a reliance upon equitable distribution. Where payments over time will be required in any event, the "clean break" advantage of equitable distribution is minimized and the tax and flexibility advantages of alimony are maximized.

This court considered other resolutions which included both higher and lower percentages of the assets to wife, and correspondingly lower and higher alimony awards. However, after consideration of the various factors outlined above, the court has concluded that the master struck the appropriate balance between equitable distribution and alimony in awarding wife 60 percent of the marital assets. In accordance with the master's plan of distribution, this means wife receives $52,182 of the profit sharing plan.

### (2) Time of Distribution

At pages 59 to 63 of his report, the master recommends a proposal that would keep wife's share of the profit sharing plan in the hands of the plan administrator and would impose a fluctuating lien

based upon the plan's performance each year. Neither party is pleased with this cumbersome scheme, and the court agrees that such a method should not be pursued here.

The master's proposed award would give husband approximately $6,000 in coin and stamp collections. Husband has $5,000 in coins acquired since separation and $9,500 in stock and money market funds acquired since separation. Husband thus has approximately $20,000 in liquid assets or assets that can be converted to cash without great difficulty. Given husband's substantial income as well as his excellent relationship with the owners of his employer, husband should have no difficulty securing financing to pay wife for her $52,182 portion of the profit sharing plan. Husband will be required to pay wife $52,182 within six months of this order and to pay her interest at 12 percent in the interim.

## III. ALIMONY

As previously noted, neither equitable distribution nor alimony may be considered in a vacuum. To some extent at least, they operate in inverse proportion to one another. As the property distribution increases, wife has more assets to produce income, and thus less need for alimony. If one takes a nickel off the cost of rutabaga and adds it to the leeks, the total grocery bill is the same. Similarly, by adding to the cash wife receives in the property distribution, her need for alimony should be reduced.

The master's finding that the reasonable needs of wife and the two minor children residing with her amount to $2,100 per month is supported by the evidence. While wife contests that finding, it is clear that (a) her telephone bill is outrageously high and (b) her legal fees are much higher now than they will be in the future. The master recognized that

wife was receiving child support of $700[5] per month and had an earning capacity of at least $400 per month net. He then found a shortfall of $1,000 per month. However, that shortfall was based upon a deferred distribution to wife of her portion of the profit sharing plan, and further attributed no income to the stocks and bonds proposed to be distributed to wife. This court calculates that wife can net approximately $500 per month from those assets. An additional $500 per month from husband will be sufficient for wife to meet her reasonable needs.[6]

The court cannot accept the recommendation that the alimony be nonmodifiable, even if wife's earnings increased. Not only is such a recommendation contrary to the Divorce Code, §501(e), but it is based on reasoning that is negated by this court's rejection of the recommendation to defer payment of wife's portion of the profit sharing plan. Since wife will have considerable assets to meet emergencies, there is no need to create such a safety valve via nonmodifiable alimony. In fact, given the employment evaluation report in this case, a nonmodifiable alimony order could be extremely prejudicial to husband, for it appears not unlikely

---

5. This court is aware that ordinarily it is advantageous from a tax standpoint to lump alimony and child support. However, under the circumstances of this case, where there is an existing child support order that automatically adjusts for the emancipation of a child, and given these parties' propensity to litigiousness, it is likely that the foregoing of a modest tax advantage will be more than compensated for by the savings in counsel fees and expenses. Husband is the party who ordinarily suffers from allocation, and here he supported it.

6. The court recognizes that the alimony will be taxable to wife. Wife seeks additional alimony to cover the taxes. However, her budget (defendant's Exhibit B) already has an expense item for taxes; so she is actually seeking to recover her taxes twice.

that wife at some point in time will be able to earn more than the $400 per month earning capacity attributed to her.

## IV. COUNSEL FEES AND COSTS

A. Counsel Fees

The master's recommendation that husband pay the unpaid portion of wife's counsel fees was predicated upon his overall proposal, which did not include the creation of any substantial fund for wife other than $16,000 in stocks and bonds. This court need not consider whether that fund of itself would be sufficient for wife to pay her own counsel fees, for this court's resolution of the case provides for her to receive an additional $52,182 for her share of the profit sharing plan. Under those circumstances, her counsel fees are her own responsibility.

B. Costs

(1) Who Pays?

On October 7, 1982, this court referred this case to a master, and ordered that wife be responsible for the costs of the proceeding. The reason for the unusual order imposing costs on the dependent spouse was the court's belief that wife's refusal to negotiate was the result of dilatoriness in pursuing discovery. The court's reasoning was that had wife's counsel been more diligent, the need for a trial might well have been obviated as meaningful settlement negotiation could have taken place.

The master has requested that this court reconsider the order of October 7, 1982. After such reconsideration, the court has concluded that it was too hasty in its assessment of the situation. The court is now convinced that like many such discovery situations, the picture is not black or white, but rather thoroughly grey. While the court still believes that

wife's counsel could have been more diligent, the court also believes that a number of roadblocks were placed in her path. It is also absolutely certain, given the court's unsuccessful attempts at conciliation prior to oral argument on the exceptions to the master's recommendation, that even if wife had every iota of information she desired, there would have been no possibility of settling this case on October 7, 1982. Under these circumstances, the order of October 7, 1982 will be vacated insofar as it imposes the costs of trial on wife.

In light of husband's vastly greater income, it is appropriate that he pay the costs of trial.

(2) How Much?

The master has filed a petition for payment of master's fees seeking $800 on deposit with the prothonotary plus an additional $1,726. In this court's opinion, the master has undercharged for his yeoman services, and the court is frankly shocked that husband is opposing this payment. The amount sought will be awarded by separate order.

EXHIBIT "A"

$ 7,785.00 (Employer contributions, '78-'79)
  3,430.62 (Reallocation of forfeitures, '78-'79)

$11,215.62 (Total of employer contributions and reallocation of forfeitures, '78-'79)

$$\frac{\$11,215,62}{\$90,240.49} = \frac{X}{\$9,342.24}$$

(Value 7-31-79)   (Dividends, interest and security value changes, 1979-1980)

X = $1,161.11

$11,215.62 (from above)
  1,161.11 (from above)
  2,347.08 (Employer contributions, '79-'80)
  2,159.93 (Reallocation of forfeitures, '79-'80)

$16,883.74 (Total)

$$\frac{\$\ 16{,}883.74}{\$104{,}089.74} = \frac{Y}{\$13{,}872.09}$$

(Value 7-31-80)     (Dividends, interest and security value changes, 1980-1981)

$Y = \$2{,}250.10$

$16,883.74 (from above)
  2,250.10 (from above)
     00.00 (Employer contributions, '80-'81)
  1,203.14 (Reallocation of forfeitures, '80-'81)

$20,336.98 (Total)

$$\frac{\$\ 20{,}336.98}{\$119{,}164.97} = \frac{Z}{\$16{,}153.42}$$

(Value 7-31-81)     (Dividends, interest and security value changes, 1981-1982)

$Z = \$2{,}756.78$

$ 20,336.98 (from above)
  2,756.78 (from above)
     00.00 (Employer contributions, '81-'82)
  1,318.77 (Reallocation of forfeitures, '81-'82)

$ 24,412.53 (Total nonmarital component to 7-31-82)

  $136,637.16 (Value 7-31-82)
−   24,412.53 (Nonmarital value 7-31-82)

  $112,224.63 (Marital value 7-31-81)

## ORDER OF COURT

And now, this July 31, 1984, it is hereby ordered that:

(1) The exceptions filed by both parties are granted or dismissed as discussed in this court's opinion, supra. If not treated in the opinion, explicitly or implicitly, the findings complained of in the exceptions were not significant in this court's decision.

(2) This court finds that the marriage between plaintiff and defendant is irretrievably broken. It is

decreed that plaintiff, Frank Fischer, is divorced from the bonds of matrimony contracted between himself and defendant, Virginia Fischer.

(3) Wife is awarded:

| | |
|---|---:|
| Marital Residence — Value | $ 54,192.00 |
| Household Furnishings | 4,765.00 |
| Fidelity Municipal Bond Fund | 14,406.00 |
| Industrial Bond of Israel | 1,000.00 |
| Radice Stock | 1,000.00 |
| Savings Account Controlled by Virginia Fischer | 400.00 |
| Share of Profit Sharing Plan | 52,182.00 |
| TOTAL | $127,945.00 |

Husband is awarded:

| | |
|---|---:|
| Coin and Stamp Collections | $ 5,948.00 |
| Fidelity High-Yield Municipal Bond Fund | 7,341.00 |
| Life Insurance Policies | 9,720.00 |
| Balance of Marital Component of Profit Sharing Plan | 62,287.00 |
| TOTAL | $ 85,296.00 |

Husband shall pay to wife within six months of the date of this order, the sum of $52,182 representing her portion of the profit sharing plan. Until the sum is paid, husband shall pay to wife interest of one percent per month on the first day of each month.

(4) Husband shall pay to wife on or before the first day of each month, the sum of $500 as alimony. Such alimony shall continue unless and until there is a substantial change in the parties' circumstances.

(5) Counsel fees are denied.

## ORDER OF COURT

And now, this July 31, 1984, it is hereby ordered that the Prothonotary of the Court of Common Pleas

of Allegheny County is hereby directed to pay to Richard R. Isaacson, Esq., the sum of $800, being the master's fee which is on deposit in the above-captioned case.

It is further ordered that within 30 days of the date of this order, plaintiff, Frank Fischer, is directed to pay to Richard R. Isaacson, Esq., the additional sum of $1,726, being the balance of the master's fees and costs due him, as determined by the court to be reasonable compensation to the master for the services rendered by him in the above-captioned case.

## AMENDED ORDER OF COURT

And now, this November 2, 1984, it is hereby ordered that:

(1) The exceptions filed by both parties are granted or dismissed as discussed in this court's opinion, supra. If not treated in the opinion, explicitly or implicitly, the findings complained of in the exceptions were not significant in this court's decision.

(2) This court finds that the marriage between plaintiff and defendant is irretrievably broken. It is decreed that plaintiff, Frank Fischer, is divorced from the bonds of matrimony contracted between himself and defendant, Virginia Fischer.

(3) Wife is awarded:

| | |
|---|---:|
| Marital Residence — Value | $ 54,192.00 |
| Household Furnishings | 4,765.00 |
| Fidelity Municipal Bond Fund | 14,406.00 |
| Industrial Bond of Israel | 1,000.00 |
| Radice Stock | 1,000.00 |
| Savings Account Controlled by Virginia Fischer | 400.00 |
| Share of Profit Sharing Plan | 70,657.00 |
| TOTAL | $146,420.00 |

Husband is awarded:

| | | |
|---|---|---|
| Coin and Stamp Collection | $ | 5,948.00 |
| Fidelity High-Yield Municipal Bond Fund | | 7,341.00 |
| Life Insurance Policies | | 9,720.00 |
| Balance of Marital Component of Profit Sharing Plan | | 64,012.55 |
| TOTAL | $ | 87,021.55 |

The wife, Virginia Fischer, 2715 Oakmoor Drive, Allison Park, Pa., 15101, as an alternate payee, shall receive a sum of ($70,657) from the accrued benefits of husband, Frank Fischer, 211 Pine Court, Pittsburgh, Pa., 15237, payable forthwith in one lump sum from the benefits or fund of husband, Frank Fischer and the National Record Mart, Inc. Profit Sharing Plan and Trust, as amended. It is the intention of the parties that this order of court be a "qualified domestic relations order" within the meaning of the Retirement Equity Act of 1984 (the Act), and the parties hereto are ordered to take any and all actions required or necessary, including the execution and delivery of any and all documents or instruments, so as to have this order of court satisfy the requirements of the Act and be treated as a "qualified domestic relations order".

(4) Husband shall pay to wife on or before the first day of each month, the sum of $500 as alimony. Such alimony shall continue unless there is a substantial change in the parties' circumstances.

(5) Counsel fees are denied.